UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:15-cv-00131-MOC

| | | |
|---|---|---|
| **STEVE SILVA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#20) and Defendant's Motion for Summary Judgment (#22). The court ordered the parties to submit supplemental briefs on March 17, 2016. See (#25). The matter has now been fully briefed and is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

### I.      Administrative History

On October 31, 2011, Plaintiff protectively filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging that he became disabled as of May 1, 2010, due to bone spurs, bulging discs, pinched nerves, scoliosis, and spinal stenosis (Administrative Transcript, hereinafter "Tr.") (178-82, 186-194, 225). Plaintiff's applications were denied initially and again upon reconsideration (Tr. 108-131). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 143-147). On June 6, 2013, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Gregory

Froehlich. (Tr. 26-64). In a decision dated August 2, 2013, the ALJ issued a decision finding

Plaintiff not disabled. (Tr. 12-20). Plaintiff then requested review of the ALJ's decision with the

Appeals Council. (Tr. 8). By notice dated February 27, 2015, the Appeals Council denied

Plaintiff's request for review, (Tr. 1-5), rendering the ALJ's decision the final decision of the

Commissioner. See 20 C.F.R. § 404.981. Plaintiff has thus exhausted his available administrative

remedies, and the case is now ripe for judicial review under Section 205(g) of the Social Security

Act. See 42 U.S.C. § 405(g).

## II.      Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the

court adopts and incorporates such findings herein as if fully set forth.  Such findings are

referenced in the substantive discussion which follows.

## III.     Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards

and whether the Commissioner's decision is supported by substantial evidence.  Richardson v.

Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986);

rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations

omitted).  A court will "affirm the Social Security Administration's disability determination

when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by

substantial evidence." Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015) (internal quotation

marks omitted).   "Substantial evidence is that which a reasonable mind might accept as adequate

to support a conclusion.  It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (citation and internal quotation marks omitted).  A court is not, however, to "reweigh conflicting evidence[] [or] make credibility determinations" in evaluating whether a decision is supported by substantial evidence; rather, "[w]here conflicting evidence  allows reasonable minds to differ," a reviewing court will defer to the Commissioner's decision.  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). The Fourth Circuit has explained the role of the district court when engaging in substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV.     Substantial Evidence

#### A.     Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record.  The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence.  For the reasons explained herein, the court finds that it is.

**B.**     **Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in

determining whether a Social Security claimant is disabled.  The Commissioner evaluates a

disability claim under Title II pursuant to the following five-step analysis:

> a.     An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;
>
> b.     An individual who does not have a "severe impairment" will not be found to be disabled;
>
> c.     If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;
>
> d.     If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;
>
> e.     If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R.  § 404.1520(b)-(f).  The burden of proof and production during the first four steps of

the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth

step, the burden shifts to the Commissioner to show that other work exists in the national

economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's

claim at the fifth step of the sequential evaluation process.

**C.**     **The Administrative Decision**

With an alleged onset date of May 1, 2010, the issue before the ALJ was whether

Plaintiff was disabled between that date through the date of decision. At step one, the ALJ found

that Plaintiff had not engaged in substantial gainful activity since May 1, 2010, his alleged onset

date. (Tr. 14). At step two, the ALJ found that Plaintiff had severe impairments of degenerative

disc disease and chronic obstructive pulmonary disease, but that his heart and mental

impairments were not severe. (Tr. 14-15). At step three, the ALJ found that Plaintiff did not have

an impairment or combination of impairments that met or medically equaled an impairment

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ then found that

Plaintiff had the residual functional capacity (RFC) to perform the following:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) [with] the option to
> sit or stand within the assigned workstation with a change of position every thirty
> minutes . . . postural motions occasionally. [No] concentrated exposure to extreme
> heat and cold, respiratory irritants, dusts, fumes and gases. [No] work around
> moving mechanical parts, and [no] work at unprotected heights.

(Tr. 16). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work.

(Tr. 19). At step five, the ALJ found that Plaintiff could perform jobs existing in significant

numbers in the national economy. (Tr. 19-20). Accordingly, the ALJ found that Plaintiff was not

disabled from May 1, 2010, through August 2, 2013, the date of the decision (Tr. 20).

**D.     Discussion**

*1. Plaintiff's Assignments of Error*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence based on

his determination at step two that Plaintiff did not have a severe mental impairment. Plaintiff

argues that the ALJ erred in rejecting the opinion of consultative Psychological Examiner Dr.

Sherry V. Risch, Ph.D., that the RFC did not incorporate Plaintiff's alleged mental impairments,

and that the ALJ therefore erroneously failed to assign work-related mental functions to

Plaintiff's RFC. In sum, Plaintiff argues that the ALJ assessed his mental impairments

improperly and thus failed to account for them in his RFC. Though these issues are interrelated, the court will address them *seriatim*.

### 2. Opinion of Dr. Risch

Psychologist Dr. Sherry V. Risch, Ph.D., performed a consultative examination of Plaintiff on April 10, 2012. (Tr. 331-35). Relevant to the instant motion, Dr. Risch opined that Plaintiff suffers from opioid dependency, a pain disorder associated with psychological factors and medical conditions, and an anxiety disorder. (Tr. 17, 335). She also opined that Plaintiff would be capable of interacting with coworkers and supervisors, but that he would be limited in his ability to work with the public. Dr. Risch also opined that Plaintiff's chronic pain and narcotics dependency would cause him to be unreliable and unpredictable, and render him unable to maintain persistence and pace. (Tr. 17, 336). The ALJ ultimately gave significant weight to Dr. Risch's diagnoses and the assigned GAF score of 60, finding that they were consistent with the claimant's ability to manage a household, care for his elderly father, shop in stores, drive, and interact appropriately with medical personnel. (Tr. 18). However, the ALJ gave no weight to the opinion that claimant would be unreliable and unpredictable in a work setting because it conflicted with other medical evidence of record, which showed that Plaintiff is capable of making and keeping appointments and interacting effectively with medical personnel, as well as the GAF score of 60. (Tr. 18).

Plaintiff argues that the ALJ erred in making such weight determinations, that the record does in fact support Dr. Risch's findings, and the ALJ's analysis and weight assessment fails to comply with the governing legal standards.

Pursuant to governing regulations, an ALJ must evaluate and weigh medical opinions, regardless of their source, with the following factors in mind: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005); see also 20 C.F.R. § 404.1527 (2005). Medical opinions constitute statements from physicians and psychologists, as well as other acceptable medical sources, reflecting judgments about the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairment, and the claimant's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). Whereas courts often accord greater weight to the testimony of a treating physician because the treating physician has examined the claimant and has a historical treatment relationship, see Johnson, 434 F.3d at 654 (citing Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001)), no such deference is required for a consultative exam. See generally SSR 96–2P, 1996 WL 374188, at *2 (July 2, 1996). A consultative examiner such as Dr. Risch is a nontreating medical source. See 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you. The term includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not your treating source."). While the ALJ may choose to give "great weight" to the opinion of a nontreating source, an ALJ is not obligated to do so. See SSR 96–2P.

As to the first, second, and fifth factors for consideration, Dr. Risch's medical opinions were based on a one-time examination and the ALJ acknowledged that she was a psychologist. (Tr. 17). As to the third and fourth factors, the ALJ explained why he gave no weight to the opinion that claimant would be unreliable and unpredictable in a work setting, and noted that it conflicted with other medical evidence of record. While the ALJ did not then specifically recite what medical evidence contradicted with such finding, his recitation of the evidence elsewhere in his decision supports that statement. For example, the ALJ noted that Dr. Sanjay Trivedi with the Jacksonville Back and Spine Institute, who treated Plaintiff for his back and pain complaints, noted that Plaintiff reported that his pain was well controlled with medication, that his pain with medication was a 1-2/10 on a pain scale of 1 to 10, and he did not have any side effects from his medication. (Tr. 17, 18, 298, 300-303). Dr. Trivedi observed that Plaintiff's gait was within normal limits and he did not note that Plaintiff was in any distress. (Tr. 18, 298, 300, 301, 302). The ALJ also discussed the findings from Dr. McCallister, the State agency psychologist, who determined after reviewing the evidence of record that Plaintiff had non-severe anxiety and substance addiction disorders resulting in only mild restrictions in activities of daily living; social functioning; and maintaining concentration, persistence, or pace. (Tr. 18, 86). Thus, the ALJ considered the supportability of Dr. Risch's opinion and the consistency of the opinion with the other medical evidence of record.

The ALJ also found that Dr. Risch's opinion that Plaintiff would be unreliable and unpredictable in a work setting was not consistent with the medical evidence showing that Plaintiff was capable of making and keeping appointments and interacting effectively with medical personnel. (Tr. 18). Indeed, the medical records do not indicate that Plaintiff had a

problem interacting with others. Rather, he is described as alert and oriented, having an

appropriate mood and affect, and having improved health, quality of life, functional ability,

mood, and motivation with his pain management treatments. (Tr. 298, 300-02). Plaintiff does not

point to any evidence contrary to such finding in the record. The ALJ also noted that Plaintiff

independently does the shopping for his household, maintains relationships with his family, and

is able to interact appropriately and effectively with medical personnel, all of which indicate that

he does not have a severe restriction in social functioning. (Tr. 15, 18). In sum, the court finds no

error in the ALJ's assignment of weight to Dr. Risch's opinions and finds that the ALJ

adequately addressed such opinion in accordance with governing law. Plaintiff's first assignment

of error is therefore overruled.

### 3. Assessing Severe Impairments

Related to his first assignment of error, Plaintiff also argues that the ALJ erred by finding

his mental impairments of pain disorder, anxiety and depression, and opioid addiction to be "not

severe." At step two of the sequential evaluation, Plaintiff must show the existence of a

medically determinable impairment, and then show it is severe. 20 C .F.R. 404.1520(a)(4)(ii),

Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir.1995). An impairment or combination of

impairments is "severe" within the meaning of the regulations if it significantly limits an

individual's ability to perform basic work activities. An impairment or combination of

impairments is "not severe" when medical and other evidence establish only a slight abnormality

or a combination of slight abnormalities that would have no more than a minimal effect on an

individual's ability to work. See 20 C.F.R. 404.1521; Social Security Rulings ("SSR" s) 85–28,

96–3p, and 96–4p. Basic work activities are those necessary to do most jobs, including walking,

standing, sitting, lifting, carrying, seeing, hearing, speaking, using judgment, responding

appropriately to supervision, co-workers and usual work situations, and understanding, carrying

out, and remembering simple instructions. 20 C.F.R. § 404.1521.

When an ALJ finds at least one severe impairment, all impairments, both severe and non-

severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2);

SSR 96–8p. As the ALJ in this case found that Plaintiff's degenerative disc disease and chronic

obstructive pulmonary disease were severe impairments, "the question of whether the ALJ

characterized any other alleged impairment as severe or not severe is of little consequence."

Pompa v. Comm'r of Social Security, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003). See

also Powell v. Astrue, 927 F. Supp. 2d 267, 274-75 (W.D.N.C. 2013) ("Where an ALJ has

already determined that a plaintiff suffers from at least one severe impairment, any failure to

categorize an additional impairment as severe generally cannot constitute reversible error,

because, upon determining that a claimant has one severe impairment, the Secretary must

continue with the remaining steps in his disability evaluation.") (citation omitted). Here, the ALJ

explicitly cited the applicable authority and acknowledged that in making the RFC

determination, he "must consider all of the claimant's impairments, including impairments that

are not severe." (Tr. 13). Plaintiff fails to articulate where or how the ALJ erred in applying such

standard. Additionally, as noted above, in order for an impairment to be severe it must

significantly limit a Plaintiff's ability to perform basic work activities. See 20 C.F.R. §

404.1520(c). Here, Plaintiff has not identified how any of the impairments he contends were

severe resulted in work-related limitations greater than those found by the ALJ during the

relevant time period. In addition, as explained in more detail below, the court finds that the ALJ

properly considered the medical evidence of record in making a determination as to the severity

of Plaintiff's impairments and their impact on his ability to perform basic work activities.

In arguing that the ALJ erred by finding that his mental limitations were not severe,

Plaintiff puts the same evidence in front of this court that he put before the ALJ and asks it to

reach a different conclusion. As noted above, so long as the ALJ's decision was supported by

substantial evidence, the court will uphold his decision. "In reviewing for substantial evidence,

[the court should not] undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro v. Apfel,

270 F.3d 171, 176 (4th Cir.2001) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996))

(internal quotation marks omitted) (first and second alterations in original). After closely

reviewing the record before the ALJ, as well as his reasoning, this court finds that substantial

evidence supports his severity analysis. The court will therefore overrule Plaintiff's second

assignment of error.

### 4. RFC

Finally, Plaintiff argues that the ALJ erred in making his RFC determination because he

failed to adequately account for Plaintiff's mental limitations. As noted above, the court finds no

error in the ALJ's treatment of the evidence on this case related to mental limitations. Similarly,

the court finds no error in the RFC determination for the reasons explained herein.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. §

404.1546(c). RFC is a statement of the most a person can do in a work setting in light of his

impairments, and any related symptoms, such as pain. 20 C.F.R. § 404.1545. RFC assesses an

individual's ability to do sustained work-related physical and mental activities in a work setting

on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *1. In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments, including the impact of any related symptoms. Id. An ALJ formulates a claimant's RFC based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

In reviewing Plaintiff's claim regarding the ALJ's credibility determination, the court notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The correct standard and method for evaluating claims of pain and other subjective symptoms has developed from the Fourth Circuit's decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990) (Hyatt III), which held that "[b]ecause pain is not readily susceptible of objective proof . . . the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating such a subjective complaint was developed by the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioner's relevant rulings and regulations. See 20 C.F.R. § 404.1529; SSR 96-7p.

The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce

the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594. If the

ALJ finds such an impairment, he must then proceed to the second step and assess "the intensity

and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id.

at 595; see also 20 C.F.R. § 416.929(c)(1), 404.1529(c)(1); SSR 96-7p. The ALJ must consider

the following: (1) a claimant's testimony and other statements concerning pain or other

subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective

medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment.

Craig, 76 F.3d at 595; 20 C.F.R. § 404.1529(c); SSR 96-7p. The term "other relevant evidence"

includes: a claimant's activities of daily living; the location, duration, frequency, and intensity of

their pain or other symptoms; precipitating and aggravating factors; the type, dosage,

effectiveness, and side effects of medications taken to alleviate their pain and other symptoms;

treatment, other than medication, received; and any other measures used to relieve their alleged

pain and other symptoms. Craig, 76 F.3d at 595. If the ALJ does not find a claimant's statements

to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. §

404.1529(c)(4); SSR 96-7p; Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) ("credibility

determinations . . . should refer specifically to the evidence informing the ALJ's conclusion").

"This duty of explanation is always an important aspect of the administrative charge, and it is

especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in

part because the ALJ is somewhat constricted in choosing a decisional process." Hammond, 765

F.2d at 426 (internal citations omitted). Additionally, to the extent that the ALJ uses what has

been characterized by the Fourth Circuit as "boilerplate language" on the credibility assessment,

the court notes that such use of boilerplate language alone does not suffice to inform the

reviewing court of the specific evidence considered in determining a claimant's credibility. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). However, such use constitutes harmless error if the ALJ properly analyzes credibility elsewhere in his decision. Id.

Here, at the first step of Craig, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 17). At the second step, the ALJ determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for the reasons stated in the decision. (Tr. 18). As noted above, the ALJ is tasked with the duty of providing specific reasons for discrediting a claimant's testimony in this manner. The court finds that the ALJ satisfied that requirement in this case.

First, relevant to Plaintiff's arguments about his pain disorder and its impact on his ability to perform work-related functions, the court notes that although the ALJ did not classify Plaintiff's pain disorder as a severe mental impairment, he thoroughly addressed Plaintiff's pain allegations and found that, while he was not as limited as alleged, Plaintiff had limitations as a result of pain.[1] (Tr. 17). The ALJ thus limited Plaintiff to light work activity with an option to sit or stand and change position every 30 minute and limited him to performing postural motions only occasionally. (Tr. 16-18). The ALJ noted that Plaintiff testified that he could not move without pain and was limited in his ability to walk, stand, sit, and lift due to such pain. (Tr. 16).

In assessing the credibility of Plaintiff's pain allegations, the ALJ noted that Plaintiff's activities of daily living, which include caring for his elderly, blind father, driving, doing

---

[1] Plaintiff contends that the Government improperly conflates the issues of evaluation of a claimant's pain and evaluation of a pain disorder as an impairment. As explained above, the court finds no error in the ALJ's designation of Plaintiff's pain disorder as non-severe. Out of an abundance of caution, the court will analyze Plaintiff's pain allegations as related to his pain disorder as they relate to the ALJ's credibility finding.

household chores, shopping, cooking, and doing laundry, were consistent with the ability to

perform light work and inconsistent with Plaintiff's reports of disabling pain. (Tr. 15, 17, 18).

See Mickles v. Shalala, 29 F.3d 918, 927 (4th Cir. 1994) (citing 20 § 416.929(c)(3)) (noting that

claimant's daily activities are appropriate for consideration of credibility assessment). The ALJ

also found that Plaintiff's allegations of pain were not fully consistent with his statements to his

treating physician Dr. Sanjay Trivedi, wherein he reported at one visit that his pain was well

controlled with medication and was a 1-2 on a pain scale of 1 to 10.[2] (Tr. 17, 298, 300, 301). The

ALJ further noted that the medical opinions of Lionel Henry, M.D., and Robin McCallister,

Ph.D., who are both consultants for Disability Determination Services, indicated that Plaintiff

would be able to perform light work as described in the RFC. The ALJ also noted that there was

an unexplained discrepancy in Plaintiff's testimony at the hearing, (Tr. 18), which weighed

against a finding of complete credibility.

Additionally, in discussing the medical evidence related to Plaintiff's opioid dependency

and anxiety disorder in the context of whether they were severe impairments, the ALJ explicitly

stated his reasons for finding that Plaintiff's mental limitations were not severe, noting that

Plaintiff had only mild limitations in activities of daily living, social functioning, concentration,

persistence and pace, and no episodes of decompensation. (Tr. 15). Additionally, he noted that

the State agency psychological consultant, Dr. Robin McCallister, determined upon a review of

the evidence of record, including the report from Dr. Risch, that Plaintiff did not have a severe

mental impairment. Dr. McCallister included specific findings that Plaintiff did not have a severe

---

2 The court notes that Plaintiff's statements that his symptoms can be reasonably controlled with medication are
themselves evidence that he is not disabled. See Clark v. Colvin, No. 5:13-CV-00157-GCM, 2014 WL 7005366, at
*3 (W.D.N.C. Dec. 11, 2014) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that a symptom
which can be reasonably controlled by medication or treatment is not disabling)).

anxiety disorder or substance addiction disorder. (Tr.18, 86-87). Such medical opinions from an "acceptable medical source" constitutes substantial evidence to support the ALJ's RFC assessment. See Lusk v. Astrue, No. 1:11 cv-196-MR, 2013 WL 498797, at *4 (citing 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) and noting that opinions of state agency physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence). The court also notes that while Plaintiff appears to argue that his anxiety and depression and opioid addiction should factor into the ALJ's RFC, he fails to articulate what activities his alleged severe impairments have on his ability to perform work abilities. As the court finds no error in the ALJ's assessment of the medical evidence of record or of his credibility assessment, the court will overrule Plaintiff's third assignment of error.

### 5. *Function-by-function analysis*

In its Order requiring the parties to submit supplemental briefs on the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) in this case, the court explicitly noted that it was concerned about what appeared to be the ALJ's failure to conduct a function-by-function analysis in determining RFC. See (#25) ("Having become familiar with the central issues addressed in Mascio, including an ALJ's failure to conduct a function-by-function analysis in formulating a claimant's RFC in accordance with SSR 96-8P, 1996 WL 374184, the court is concerned that such issues may be present here, yet are not addressed by the parties' briefs."). Despite being allowed additional time to discuss the implications of Mascio, neither party addressed this issue in their supplemental briefs. Upon consideration of the issue, the court

finds that any potential error on the part of the ALJ related to this issue was harmless, as explained herein.[3]

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. The RFC assessment must address both the exertional and nonexertional capacities of the individual. SSR 96-8P, 1996 WL 374184, at *5. Exertional capacity "addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)….it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Nonexertional capacity must be expressed in terms of work-related functions. Id. at *6. The "basic mental demands of … unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4.

---

3 Having carefully considered the parties' supplemental briefs on the impact of Mascio on this case, the court finds that none of the Fourth Circuit's holdings therein require remand. Nonetheless, the court appreciates the parties' supplemental briefs filed on the issue.

Only after that function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed.Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted). The Fourth Circuit in Mascio declined to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Instead, the court found that remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki, 729 F.3d at 177).

Here, the ALJ did not perform an explicit function-by-function analysis. But that failure alone, as the Fourth Circuit explained in Mascio, is not enough to require remand. Instead, the court must determine whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether that decision is supported by substantial evidence in the record. The court finds that he did. Here, Plaintiff does not appear to contest any of the RFC's findings as to exertional abilities, but rather focuses on his alleged mental limitations. The exertional limitations thus appear to be uncontested. Nonetheless, the court notes that the ALJ here specifically accounted for Plaintiff's

limited exertional abilities due to his physical impairments by limiting Plaintiff to light work with a sit/stand option and the ability to change position every 30 minutes. As to non-exertional limitations, as noted above, Plaintiff has failed to articulate which work functions his allegedly severe mental impairments would impact. It is not obvious to the court which functions those might be, particularly given its finding that the ALJ made no error in assessing Plaintiff's mental limitations. As such, the court finds that the ALJ's failure to conduct a function-by-function analysis in conjunction with determining RFC is harmless error in this case because the ALJ appropriately addressed Plaintiff's exertional capacities and the non-exertional limitations are "irrelevant or uncontested." See Mascio, 780 F.3d at 636.

E.    Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.  See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is

**AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (#20) is **DENIED**;

(3) Defendant's Motion for Summary Judgment (#22) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: May 16, 2016

Max O. Cogburn Jr.
United States District Judge